# Wytheville.

H. CHESTER WISE v. W. F. D. WILLIAMS AND OTHERS.

June 12, 1930.

Absent, Campbell and Holt, JJ.

696

The opinion states the case.

*Mears & Mears,* for the appellant.

*Thomas H. Nottingham* and *James E. Heath,* for the appellees.

Epes, J., delivered the opinion of the court.

This is an appeal from a decree of the Circuit Court for Northampton county entered March 30, 1929, in a suit brought by Edmund E. Hamilton, a creditor of Arthur Hunt, suing in behalf of himself and all other creditors of Arthur Hunt, against W. F. D. Williams, E. V. Downes, and Upshur Wilson, the members of a committee of the creditors of Arthur Hunt, to which suit Arthur Hunt and H. Chester Wise, Miss Lucy Johnson and William J. Hunt, creditors of Arthur Hunt, became parties during the proceedings had therein.

The purpose of the suit is to procure the distribution to the creditors of Arthur Hunt of a fund of $1,800.00 in the hands of said committee. The real controversy here is between H. Chester Wise, a deed of trust creditor, on the one side, and Miss Lucy Johnson and William J. Hunt, execution creditors, to whom the court decreed that the whole of the $1,800.00 fund should be paid, on the other side.

Arthur Hunt had for many years owned and operated a farm containing about 163 acres in Northampton county, Virginia. He became deeply involved in debt; and asked his creditors to meet him on September 2, 1924, to determine, if possible, upon some course of action with reference to his indebtedness which would permit him to continue the operation of his farm during 1925. So far as need here be named the lien creditors of Arthur Hunt on September 2, 1924, were, as to principal of the indebtedness and order of their priority, as follows:

1. Eastern Shore of Virginia Fire Insurance Company, a debt, the amount of which is not given in the record, secured by a deed of trust on Hunt's farm containing 163 acres;

2. Farmers and Merchants Bank, $4,500.00 secured by deed of trust on said farm;

3. Farmers and Merchants Trust Bank, $4,620.00 secured by deed of trust on said farm;

4. American Fertilizer Company, $4,637.97 secured by deed of trust on said farm;

5. Cape Charles Bank, Incorporated, $4,902.50 secured by deed of trust on said farm;

6. H. Chester Wise, $5,483.59 secured by deed of trust on said farm;

7. Edmund E. Hamilton, amount not stated, secured by deed of trust on said farm;

8. Miss Lucy Johnson, assignee of a judgment against Arthur Hunt and Walter Wilkins in favor of American Agricultural Chemical Company for $603.75;

9. L. A. Cushman, $2,093.87 secured by deed of trust on said 163 acre farm, 120.98 acres of oyster land, and certain mules and other personal property;

10. A. T. Scott, $1,247.00, and Wm. J. Hunt, $1,187.00 secured ratably in the deed of trust securing Cushman, but as liens subsequent to that of Cushman.

In addition to the above there were certain other judgment creditors and some creditors who held no liens.

Some, but not all, of his creditors attended the meeting on September 2, 1924, at which meeting an agreement was drawn up and signed by Hunt and all

the creditors present in person or by their representatives. This agreement reads as follows:

"It is hereby covenanted and agreed by and between Arthur Hunt and the undersigned creditors of the said Arthur Hunt, that the said creditors will not endeavor to enforce by chancery suit or sale of the property of the said Arthur Hunt, real and personal, either to satisfy any liens thereon or any liens which may be obtained until August 1, 1925, after which time any creditor whose name is signed hereto shall have the right to enforce his liens and expose to sale the real and personal property of the said Arthur Hunt, situate and being in the county of Northampton, State of Virginia. In consideration of the indulgence given to me by my creditors whose names are signed hereto, I do hereby covenant and agree that my said creditors shall cause the said farm of the said Arthur Hunt to be rented out for the year of 1925, on the best terms and for the best price that they can secure for the same. Said rental to be either a cash rent or upon usual one-third terms as they may best determine.

"And it is further agreed by and between all the said parties that Upshur Wilson, E. V. Downes, and W. F. D. Williams be and hereby are appointed as receivers to rent out the said farm of Arthur Hunt for the year of 1925, for either the usual share rent, or for a proper rent, and that they be further authorized to collect all rents due and when so collected to pay thereout the taxes for the year 1925, and the balance to be paid to the lien creditors of the said Arthur Hunt, according to the priorities excepting that the Eastern shore of Virginia Fire Insurance Company shall receive no part thereof. But this agreement is not to be effective unless all the creditors of said Arthur Hunt come into and are parties to this agreement.

"Witness our hands this the 2nd day of September, A. D. 1924.

"Arthur Hunt E. S. of Va. Fire Ins. Co.,
    Mears & Mears, Attys.
"Lucy Johnson, Assignee of A. A. C. C.
    by Mears & Mears, Attys.
"W. F. D. Williams American Fertiliz-
    ing Co.
    by W. F. D. Williams, Agt.
"A. T. Scott Farmers and Merchants
    Trust Bank
    by Upshur Wilson, Presd't.
"E. V. Downes G. D. Horner & Bro.
    by G. D. Horner.
"Cape Charles Hardware Co., Inc.
    by Otto Lowe, their Atty.
"H. C. Wise
"L. W. Stevenson
"W. A. Copes
"C. D. Nottingham
"Wilson, Hallett & Co.
"Edmund E. Hamilton
    by Jno. T. Daniel, his attorney."

It was understood by those present at the meeting that said creditor's committee were to obtain the signatures of the creditors who did not sign it at that time, and some effort seems to have been made by them to get other creditors to sign it. However, three of the lien creditors, Cape Charles Bank, Incorporated, L. A. Cushman, and William J. Hunt, and four of the creditors holding no liens, H. W. Williams & Sons, Walter Wilkins, W. B. Wilson & Son, and L. B.

Travis & Son, did not sign said agreement. The amounts due said creditors holding no liens do not appear from the record.

The record is silent as to whether the Cape Charles Bank, Incorporated, L. A. Cushman, and William J. Hunt were approached with reference to signing said agreement or not, or as to why they did not sign it.

W. F. D. Williams, one of the creditors' committee, who at the creditors' meeting signed said agreement for himself as an individual and as the representative for certain other creditors, was also a member of the firm of H. W. Williams & Sons. He testifies he held a power of attorney to sign the agreement for H. W. Williams & Sons, but that after the others failed to sign it, "I thought the paper would not be legal for the reason the other creditors did not sign it and that it was no good, and I did not sign for H. W. Williams & Sons."

L. B. Travis & Son when approached refused to sign saying: "The amount was small and it really made no difference."

Walter Wilkins was away from the State at the time of said meeting on September 2, 1924, so far as the record shows, knew nothing about the agreement.

Mr. Upshur Wilson, one of the creditors' committee, testifies that he had authority to sign the agreement for W. B. Wilson & Son, but was taken sick and did not sign it for W. B. Wilson & Son. Mr. Upshur Wilson also testifies that Arthur Hunt, soon after September 2, 1924, told him that his son, William J. Hunt, would sign the agreement, but that William J. Hunt did not do so.

Soon after September 2, 1924, Mr. Arthur Hunt went to see Mr. Wilson and Mr. Williams, two members

of the creditors' committee named in said agreement, about his (Hunt's) renting the farm for 1925; and on or about September 15, 1924, the committee made Hunt a "tentative" offer to rent him the farm for 1925 at $1,800.00, payable $1,200.00 on October 1st and the remainder December 1st, but required that he give bond for the payment of the rent. Later Hunt offered to the committee as security for the payment of the rent a bond for $1,600.00 owned by Miss Lucy Johnson, a relative of his wife, who was then and had been for many years living in their home, and delivered the bond to Mr. W. F. D. Williams who retained it until after the sum of $1,800.00 had been paid to or deposited with said Williams as hereinafter mentioned. About the last of September, or first of October, 1924, the committee agreed to rent the farm to Hunt for 1925 for $1,800.00; but no written contract renting the farm to Mr. Hunt was ever executed or drawn up for execution.

Some time during the fall of 1924, after the committee had agreed to rent the farm to Mr. Hunt and he had delivered to Mr. Williams the bond referred to above, he made inquiry of Mr. W. F. D. Williams whether all his creditors had signed the agreement or not, and Mr. Williams testifies: "I told him no," and that "I had been to several parties and they had not signed it, and I said I did not think it was any good."

During the year 1925, Arthur Hunt cultivated and operated said farm in the name of Miss Lucy Johnson. All purchases for the farm and sales of produce from the farm being made in her name, and there seem to have been some negotiations with reference to the farm being treated as rented by Miss Lucy Johnson; but the evidence with reference thereto is very vague. Mr.

W. F. D. Williams, who handled the matter of renting the farm, testifies that he is not sure to which he rented it, Hunt or Miss Johnson, but says: "My impression was that Miss Lucy Johnson was going to put up bond as security for the rent." About January 1, 1925, a draft for a contract between the creditors' committee and Miss Lucy Johnson renting this farm to Miss Lucy Johnson for $1,800.00 was drawn up at the direction of Mr. Upshur Wilson. Later, about May 5, 1925, this draft was rewritten and some changes made therein. The attorney who drew both drafts testifies that he rewrote the draft to meet certain changes "as requested by" Miss Lucy Johnson. However, Miss Lucy Johnson did not sign either draft. She testifies positively that she had nothing to do with renting the farm except to let Mr. Hunt put up her bond as security for the rent, and Mr. Hunt testifies that she did not sign said drafts for a lease because he told her not to do so.

On or about July 23, 1925, to February 19, 1926, Mr. Arthur Hunt paid to or deposited with Mr. W. F. D. Williams, who acted as chairman of said creditors' committee, $500.00, and made five other deposits or payments, the last on February 19, 1926, the total paid to or deposited with Mr. Williams aggregating $1,801.40. This money was deposited in the Farmers and Merchants Bank of Cape Charles to the account of Mr. W. F. D. Williams, receiver. Of this amount $200.00 was paid by a check of an insurance company, received by Hunt in 1925, for a barn on said farm which had burned in 1923, and some of the payments were made from money received by Hunt from oysters taken up from his planting ground and sold. But the larger part of said payments were made from proceeds of potatoes, corn and other

produce of the farm raised and sold in the name of Miss Lucy Johnson.

Mr. Hunt testifies with reference to said payments or deposits as follows:

"From the very start I refused to deposit in the bank. * * * I told Mr. Williams I wasn't going to deposit any at all. So after talking it over with him I told him this contract was not signed and they had never rented the farm and I had gone on and cultivated it like I always had because I didn't consider it rented at all because the contract was not signed by all the creditors, but he advised me in case any court proceedings come on to deposit the money, and I told him I would deposit it under protest."

The conversation with Mr. Williams referred to in the above testimony appears to have been had about the time of the first deposit of $500.00 about July 23, 1925, which came from the sale of potatoes.

At another time, when asked under what conditions he paid this money to Mr. Williams, Mr. Hunt testifies:

"I told him the farm was rented and Lucy wanted her bond, but for that I would not pay a penny further. I paid it over to him to keep and never distribute until the court ordered and I considered it under that condition. I said it was my money, the contract had never been carried out and they had no right to my rent at all, it should go to defray my other indebtedness."

Mr. W. F. D. Williams testifies with reference to said payments as follows:

"Q. Between the date of said agreement, September 2, 1924, and January 1, 1925, did you have a conference with Arthur Hunt relative to renting the farm, and if so, please state what it was?

"A. Mr. Hunt called me up sometime in the fall and asked if all parties had signed that agreement. I said: 'No,' and I told him that Mr. Wilson was sick and had gone to the hospital and I had been to several parties and they had not signed it, and I said I didn't think it was any good.

"Q. Did this creditors' committee, composed of E. V. Downes, Upshur Wilson and yourself, ever rent the Hunt farm in question to Mr. Hunt or any other party for 1925?"

"A. We made a tentative agreement that the contract was to be signed before it was a bargain. We talked it over and he said if this thing is signed, it is an agreement, if not  *  *  *  *  *.

"Q. You did not catch my question. I said after this conference with Mr. Hunt, did you actually rent this farm to Mr. Hunt or anyone else?

"A. I didn't go any further. I advised him to pay the money in the bank and let the judge decide.

"Q. Did he pay it?

"A. He paid $700.00, and then about Christmas he paid so re more.

"Q. I mean, did he pay it as rent for the farm?

"A. He said he was putting it in the bank and would let the judge decide it, because at that time John Daniel was trying to get me to distribute the money for Mr. Edmund Hamilton.

"Q. And Mr. Hunt paid it under protest?

"A. Yes, sir."

At another time Mr. W. F. D. Williams testifies with reference to said payments as follows:

"Q. When this money was paid to you by Mr. Hunt, did he advise you that this agreement was not effective and request the proceeds be not paid except by order of court?

"A. When he turned the check over to me he said there was going to be a squabble because all the parties had not signed, and furthermore, he said the word priority was in the agreement and we got the contract and it was in there."

None of the creditors of Arthur Hunt prior to August 1, 1925, made any endeavor to enforce by chancery suit or sale any lien upon any of the property real or personal of Arthur Hunt.

Mr. Wilson and Mr. Downes, the other two members of said committee, Mr. Daniels, who was counsel for Edmund E. Hamilton, and Mr. Mears, who was counsel for Eastern Shore of Virginia Fire Insurance Company, and Mr. H. Chester Wise, all testify that at no time prior to the institution of the suit did Mr. Arthur Hunt make any claim to any of them that the money paid to or deposited with Mr. Williams as chairman of said committee belonged to him (Hunt) and was not to be distributed by said committee to his creditors in accordance with said agreement of September 2, 1924.

On September 10, 1925, said 163 acre farm was sold under the first lien deed of trust which had been given to secure the Eastern Shore of Virginia Fire Insurance Company, and was purchased by H. Chester Wise, the appellant, at $47,000.00.

Mr. Wise testifies that just before said sale he discussed with the trustee making the sale how he (Wise), under his subsequent deed of trust, would stand with reference to the proceeds of sale; and that in this discussion it was calculated that the $1,800.00 to be received from the rent of the farm to Hunt would be applied to the payment of 1925 taxes, and to the deed of trust debt of the Farmers and Merchants Bank, which was prior to that of the Wise deed of trust.

However, no knowledge of this discussion is brought home to Arthur Hunt.

On March 15, 1926, the deed of trust securing the Farmers and Merchants Trust Bank (lien No. 3) and the deed of trust securing the Cape Charles Bank, Incorporated (lien No. 5), were released of record; and it would appear that prior to the institution of this suit all liens on said farm prior to the deed of trust securing the deed due H. C. Wise were paid off, with two exceptions: (1) the taxes for 1925, amounting to $158.00, plus a penalty of five per cent; (2) a balance of $1,600.00 with interest from March 15, 1926, on the debt due the Farmers and Merchants Bank, secured by the deed of trust which was the second lien on said farm. While the record is not clear on the point, it would appear that these prior liens were paid off out of the purchase money received for said farm at the trustee's sale.

At the time of said sale the deed of trust debt due Wise by Hunt (lien No. 6) amounted approximately to $6,000.00; but, in some way which the record does not explain, though the Wise deed of trust was, so far as the record discloses, subsequent to the Farmers and Merchants Bank deed of trust, yet Wise was paid out of the proceeds of the sale of the farm "around $3,000.00 or $4,000.00," as he in his testimony very indefinitely states it, apparently leaving due to Wise a balance of approximately $2,000.00.

On or about October 21, 1925, after Arthur Hunt had paid to or deposited with Mr. Williams about $700.00, Arthur Hunt went to Wise and told him, in effect, that his creditors had all of his property, and that unless he could secure a release from them of his indebtedness, he would have to go into bankruptcy. In accordance with the request of Hunt and without

any consideration therefor, Wise executed and delivered to Hunt the following paper:

"I, H. C. Wise, for value received, do hereby agree to release Arthur Hunt, Winnie T. Hunt, of any indebtedness which he might owe me, except such a sum as I receive from the real estate which was formerly owned by the said Arthur Hunt and purchased by me.

"Given under my hand this the 21st day of October, A. D., 1925.

"H. C. WISE."

Wise testifies, with reference to this release, that "I did it just to help him;" that at the time he signed the release he did not know, nor had he made any effort to find out, whether all the creditors had signed the agreement of September 2, 1924, or not; but that he would not have signed the release had any suggestion been made to him that Hunt was claiming that said agreement of September 2, 1924, was not binding on Hunt and his creditors or that Hunt claimed that the rent money was not applicable according to the terms thereof. There is no testimony tending to show that, at the time of said conversation with reference to said release, either Hunt or Wise made any reference to the agreement of September 2, 1924, or to the farm having been rented to Hunt or Miss Johnson, or to any sum having been paid to or deposited with said committee, or Mr. Williams, by Hunt.

At second March rules, 1926, Edmund E. Hamilton, a creditor of Arthur Hunt, whose debt was secured by a deed of trust (lien No. 7) on said farm, filed his bill in this suit seeking a distribution of said fund of $1,801.40 in accordance with said agreement of September 2, 1924. The only persons made parties defendant to this bill were Williams, Downes and Upshur,

the three members of said creditors' committee. However, though Arthur Hunt was not made a party thereto, process to answer said bill was also served upon Arthur Hunt.

The members of said creditors' committee filed a joint answer to said bill in which they asked that the court construe said agreement of September 2, 1924, and direct them to whom to pay the fund of $1,801.40 in their hands.

By decree entered September 21, 1926, this cause was referred to Mr. Dunton J. Fatherly, a commissioner in chancery of the court, to make inquiry and report to the court, among other things, who were the lien creditors of Arthur Hunt on September 2, 1924, and the order of their priorities, and who are entitled to the fund in the hands of said creditors' committee.

Said commissioner gave notice that on November 3, 1926, he would proceed to execute said order of reference; but on November 1, 1926, the execution liens here in controversy attached.

On March 14, 1923, the American Agricultural Chemical Company had secured a judgment against Arthur Hunt and Walter Wilkins for $603.75 and interest and costs, on which execution issued on November 24, 1923. This judgment had been duly assigned for value to said Miss Lucy Johnson by an endorsement on said execution, dated October 30, 1924.

On November 1, 1926, Arthur Hunt confessed judgment in the clerk's office of the circuit court of Northampton county in favor of his son, William J. Hunt, for $1,187.00 with interest and costs. This judgment was confessed upon the same bond held by William J. Hunt on September 2, 1924, which was secured by the deed on said 163 acre farm, 120.98 acres of oyster land and certain property mentioned as lien No. 10 above.

On November 1, 1926, executions which had issued on said judgments in favor of American Agricultural Chemical Company and William J. Hunt, were placed, at the same time, in the hands of the sheriff of Northampton county to be executed.

Neither said Farmers and Merchants Bank nor H. Chester Wise filed a petition in this cause, but they both appeared before said commissioner, introduced evidence before him, and before him asserted the claim that under said agreement of September 2, 1924, they were entitled to have said sum of $1,801.40 in hands of said committee applied (1) to the payment of the 1925 taxes on said farm amounting to $158.00 plus the five per cent penalty and interest, and (2) to the payment of the sum of $1,600.00 with interest thereon from March 15, 1926, due by Hunt to Farmers and Merchants Bank on the debt secured by said deed of trust on said farm (lien No. 2 above mentioned). Nowhere in the record does the sole appellant, H. Chester Wise, allege or undertake to prove that, under any circumstances, he is entitled to have any part of said $1,801.40 distributed to him to be applied on the debt due by Hunt to him, or that if the said $1,600.00 debt be paid to the Farmers and Merchants Bank he, Wise, will be in any way benefited thereby.

The commissioner reported as follows: (1) By reason of the failure of some of the creditors to sign the agreement of September 2, 1924, it never became binding upon Hunt or his creditors who did sign it; (2) the evidence does not show a waiver by Hunt of the provisions of said agreement that it was "not to be effective unless all the creditors of said Arthur Hunt come into and are parties to this agreement" or conduct which estops him to deny that said fund shall be distributed in accordance with the provisions

of said agreement; and (3) Miss Lucy Johnson, assignee of American Agricultural Chemical Company, and William J. Hunt have acquired, by virtue of their said executions, liens of equal dignity upon said fund, which are prior to any other lien thereon, and said fund should be applied pro rata to the payment of said execution liens.

To this report Farmers and Merchants Bank and the appellant filed their exceptions, the grounds of which are essentially the same as the grounds upon which appellant here bases his assignment of error.

The cause was again referred to the said commissioner in chancery and after taking further depositions, he reported that he had found nothing to change the conclusions stated in his former report.

By its decree of March 30, 1929, the court confirmed the said reports of Commissioner Fatherly, and decreed that the fund of $1,801.40, plus interest accrued thereon from the deposit thereof in bank, be applied (1) to the payment of the costs of this suit, and (2) then pro rata to the payment of said execution debts due by Arthur Hunt to Miss Lucy Johnson and William J. Hunt.

From this decree no appeal is taken by Farmers and Merchants Bank or any other party to this suit except H. Chester Wise, who is the sole appellant here.

The error assigned by the appellant is that the court erred in confirming the report of Commissioner Fatherly, and, to use the language of the petition for appeal, "in failing to decree that said fund in said Farmers and Merchants Trust Bank, $1,801.40, and interest, after the payment of costs, should first be applied to the payment of the taxes of Arthur Hunt for the year 1925, and the balance then remaining paid over to the Farmers and Merchants Trust Bank on its lien on the property of Arthur Hunt."

No appeal is taken from the decree of the court in so far as it orders the payment of the costs of this suit from said fund.

The grounds on which the appellant relies in support of its assignment of error, briefly stated, are as follows:

██ (1) The evidence shows that though all the creditors of Arthur Hunt existing on September 2, 1924, did not sign said agreement, yet none of them attempted to enforce any lien upon the property of Arthur Hunt until after August 1, 1925; and by refraining from so doing accepted the said agreement and performed the terms and conditions thereof; and it therefore became binding upon Arthur Hunt and even those creditors who did not sign it, for instance, William J. Hunt.

The answer to this is that the evidence does not show that the forbearance of those creditors who did not sign the agreement was in pursuance of or acceptance of the terms of such agreement, or because of the existence thereof.

█ (2) Even if the agreement of September 2, 1924, be construed to require all the creditors of Hunt to sign it, before it should become effective, yet Arthur Hunt by his acts and conduct knowingly waived this requirement.

The weight of the evidence is, as found by the commissioner and the court, against this contention; but in addition to this, so far as the record discloses, Arthur Hunt had no power to waive this requirement for and on behalf of the creditors here in interest, Miss Lucy Johnson and William J. Hunt; and the record shows no act on their part which can be deemed a waiver thereof.

█ (3) Arthur Hunt procured the release from H.

Chester Wise of the balance of a debt due to Wise by Hunt and his wife by representing to Wise that his creditors had all his property; and the claim of Arthur Hunt that said agreement had never become binding upon him and that the money paid by him (Hunt) to said creditors' committee belonged to him (Hunt) and not to said creditors' committee for distribution under the terms of said agreement, is inconsistent with said statement to Wise on which Wise relied, and relying on which has changed his position to his prejudice. Therefore, Arthur Hunt is now estopped to deny that said money should be distributed according to the terms of said agreement.

The weight of the evidence supports the findings of the commissioner on this point and the decree of the court confirming said report; but even if Hunt did procure said release by representations which estop him from claiming said money as his own as against this appellant, there is no evidence that Miss Lucy Johnson or William J. Hunt participated in, knew of, or ever had notice of such representations, or that Wise, relying thereon, had released Hunt from his indebtedness, and they are not estopped thereby.

We find no error in the decree appealed from and the decree of the court is affirmed.

*Affirmed.*